# EXHIBIT D

# ABC Management – Baltimore, LLC

**100 INTERNATIONAL DRIVE**
Baltimore, MD

---

# Property Management Contract

This Agreement is entered by and between ABC Management – Baltimore, LLC, hereinafter called "**AGENT**," and   Avelino Harbor LLC, hereinafter called "**OWNER**."

**WITNESSETH** that, in order to induce the AGENT to enter into this agreement, OWNER hereby Represents and Warrants to AGENT that it is the OWNER of all the properties listed in Exhibit A (hereinafter "premises") as updated from time to time, that the premises have necessary Fire and Extended Coverage and Liability Insurance current, lead certificates if required, that the premises meet all required building and use codes, AND that the premises is registered both with the Municipality and with Maryland Department of Environment as required:

In consideration of these representations, warrants and the fees to be paid, AGENT agrees to act as management AGENT with respect to the property listed in Exhibit A, to use due diligence in the management of said premises upon the terms herein provided, and agrees to furnish the services of AGENT for the renting, leasing, operating and managing of said premises subject to and in accordance with the terms and provisions set forth below.

**I. AGENT'S COMPENSATION:**
    A. OWNER shall pay a monthly management fee shall and be charged as follows:
        For each premises or unit managed by AGENT, **ten percent (10%)** of the collected monthly rent, but not less than $50.00 for rented units, payable on the first day of each month.  If Owner waives any rent amount due Agent shall be entitled to the management fee as if the amount was collected.  The minimum amount is due even if the rent is collected at a later date.

    B. OWNER shall pay any late charge: judicial fine, penalty, or multiple damage; or interest collected from the tenant to the AGENT as an additional fee, as described in **Paragraph IV.B.**



~~C. OWNER shall grant the AGENT the right to Lease the premises, and shall pay to the AGENT a leasing fee of one hundred percent (100%) of the first month's rent if the premises is leased during the effective period of this Agreement.~~

**II. LEASING:**

A. OWNER hereby authorizes AGENT to rent the premises for a minimum term of one year.



~~B. All utility charges, as appropriate, shall be paid by the tenant during tenant's occupancy. Water charges shall be paid by OWNER directly to Municipality and, where appropriate, shall be promptly presented by OWNER to AGENT for reimbursement from Tenant.~~

C. AGENT shall collect a security deposit from all tenants as directed by OWNER. The security deposit shall be maintained in the escrow account of OWNER.

**III. DISBURSEMENTS**: AGENT shall pay, OUT OF OWNER'S FUNDS AVAILABLE, the following as they shall accrue and in the order here set out:

A. AGENT's compensation, as set forth in Paragraph I.

B. Such advertising and utility bills (including gas, electric, and water), necessary repairs and/or charges to maintain the property, and cleaning charges as shall accrue or be necessary to preserve the property during periods of vacancy or occupancy, or to put the property in a rentable condition after vacated; or expenses to regain possession and/or to attempt to collect delinquent rent subject to the provisions set forth below; or necessary professional fees; or governmental assessments.

C. Proceeds to OWNER. Tenancy revenues, refunds, adjustments, or other funds due OWNER shall be sent to the address provided by the OWNER on or before by the 15TH of the following month that the rent is collected (45 Days after the rent is due). If OWNER's account is negative AGENT may invoice that amount to OWNER. OWNER agrees to pay such invoice within 10 business days. If any of the invoice amount is outstanding for more than 3 days following said period of 10 business days such amount is subject to 5% interest penalty per month accrued on a daily basis.

D. **IT IS EXPRESSLY AGREED THAT NOTHING HEREIN CONTAINED SHALL BE CONSTRUED AS REQUIRING AGENT TO ADVANCE ANY OF ITS OWN MONIES FOR ANY PURPOSE WHATSOEVER.**

**IV. GENERAL PROVISIONS:**

**A. GRANT OF POWER:** Subject to the limitations set out herein, OWNER grants AGENT full power and authority to lease, let, rent and demise the premises, or any part thereof, in its own name as AGENT for OWNER. In order to effectuate same, AGENT may enter into such written contracts and/or leases as AGENT deems necessary, in its own name as AGENT for OWNER. Agent has the right to approve the rental amount for

the initial lease and OWNER has the right to approve the rental amount for any subsequent new lease or renewal. AGENT may collect and receive all rents arising as a result of AGENT's management of the premises. AGENT may use such means as are ordinary and customary in collecting or attempting to collect any delinquent accounts. AGENT may, with OWNER approval evict any tenant who violates any term of the lease. OWNER hereby assigns to AGENT any and all delinquent rents which may accrue from any tenant for the purpose of crediting such rents to OWNER's operating account for required disbursement.

**B. COLLECTION OF RENT**
  1. AGENT shall use such means as are ordinary and customary to collect or attempt to collect any rent from any tenant of the premises. In the event that legal action is necessary to obtain judgment for possession of the premises, delinquent rent, or damages upon other causes of action, AGENT is authorized to employ attorneys, to sue in its own name as AGENT for OWNER, and to expend the sum of up to six hundred dollars ($600.00) per premises or unit for each monthly billing cycle from OWNER's account for such purposes without OWNER's prior permission. If the legal expense will exceed this amount, the AGENT will obtain prior OWNER permission to proceed. Additionally, AGENT will, when requested by OWNER, instigate action, legal or otherwise, for the collection of rents which is beyond the discretion heretofore allowed to AGENT, provided such action is considered reasonable by the AGENT.
  2. AGENT SHALL NOT BE HELD MONETARILY RESPONSIBLE FOR ITS INABILITY TO COLLECT RENTS. AGENT SHALL NOT BE HELD RESPONSIBLE FOR ANY EXPENSES INCURRED FOR LEGAL ACTION INVOLVED IN THE COLLECTION OF RENTS AND/OR THE EVICTION OF ANY TENANT AND/OR DAMAGES INCURRED TO THE PROPERTY. All such expenses shall be paid by OWNER, reimbursable in the event AGENT is able to collect the rents, legal fees, or damages from the tenant.
  3. If a late charge, judicial fine, penalty, or multiple damage, or interest is collected from the tenant, it shall be considered income to AGENT for its additional effort and time.

**C. MAINTENANCE**
  1. AGENT shall have full authority to perform or to cause to be performed such maintenance of the property as is reasonable and necessary for the safety of the tenants and the preservation of the property at OWNER's expense.
  2. AGENT may, at his sole discretion, install fire/smoke detectors, carbon monoxide detectors, and/or fire extinguishers on the property at OWNER's expense.



~~3. In the event maintenance, repairs, or construction are required to be performed to the property in excess of $ 500 , AGENT will obtain prior OWNER permission to proceed.~~

**D. DISCRETIONARY AUTHORITY:**
    1. OWNER expressly grants AGENT full power and authority to contract and pay for all repairs and cleaning costs, not exceeding the amount stipulated in paragraph IV.C.3. above, which in its discretion it deems necessary or advisable to maintain; or put the premises in a rentable condition; or to repair the same in the event of damage or destruction to the premises due to fire, windstorm, hail, flood, riot, civil commotion, tenant abuse, or other causes resulting in damage to the premises, all at OWNER's expense. Should the estimate or contemplated cost exceed funds on hand, OWNER shall promptly remit, upon AGENT's request, the necessary balance.
    2. In an emergency, OWNER authorizes AGENT's expenditure in excess of funds on hand and above the amount stipulated in paragraph IV.C.3. above, without prior authorization. OWNER shall thereafter promptly remit, upon AGENT's request, the necessary balance.
    3. Failure of OWNER to remit balances described in this subparagraph shall result in AGENT's reimbursement therefore from subsequent revenues ordinarily accruing and payable to OWNER.

**E. INSURANCE COVERAGE:** OWNER is obligated, at OWNER's expense, to keep the necessary Fire and Extended Coverage and Liability Insurance current and renewed. AGENT shall be shown as an additional insured under the liability section only.

**F. LIABILITY OF AGENT:** It is agreed that AGENT shall use reasonable and ordinary care in all acts assigned for performance by this Agreement. When any act is required of the AGENT, it shall be done in the ordinary course of AGENT's business.
    1. Other than in cases of bad faith, fraud or willfull misconduct by AGENT or any of its representatives, OWNER shall save and hold AGENT harmless and indemnify AGENT from any and all claims, charges, debts, demands and lawsuits, which may arise in connection with the management of the premises, and from any liability from injuries suffered by any person entering or about the premises, including any property manager or other employee.
    2. Other than in cases of bad faith, fraud or willfull misconduct by AGENT or any of its representatives, AGENT shall not be personally liable for any act it may do or omit to do hereunder as AGENT.
    3. AGENT is hereby expressly authorized to comply with and obey any and all process, orders, judgment or decree, it receives of any court; where AGENT obeys or complies with any such process, order, judgment or decree, it shall not be liable to OWNER or any person, firm, or corporation by reason of such compliance, notwithstanding subsequent reversal or modification.

4. AGENT is hereby expressly authorized to comply with any laws, whether now in existence or hereinafter enacted, and whether federal, state, or local, relating to fair housing, rent control, discrimination, and health and welfare. AGENT is expressly authorized to comply with the rule or order of any governmental agency, insofar as such order in any manner affects the management of the premises or any duties of the AGENT hereunder.

### G. ACCOUNTING FOR FUNDS:

1. AGENT shall furnish OWNER a monthly accounting statement showing the receipts and expenditures with respect to the premises, plus OWNER's monthly proceeds.
2. AGENT shall furnish a final accounting upon the termination of this agreement within forty-five (45) days from the date of a written request of management termination, except as modified by this agreement.

### H. SECURITY AND DAMAGE DEPOSITS

1. All security and damage deposits shall be accounted to owners account and maintained by OWNER. OWNER shall return to the tenant any legally required amounts when the tenant vacates the premises, consistent with Maryland law.
2. AGENT shall properly account for sums retained for the purpose of off-setting OWNER's expenses for unpaid rent, utilities, cleaning charges, or repairs.
3. In the event litigation shall occur concerning security deposits, AGENT may defend same in its own name as AGENT for OWNER, at OWNER's expense.
4. Should AGENT and OWNER disagree on the amount of security deposit to be refunded to the tenant, AGENT shall have no further obligation or liability whatsoever concerning the security deposit to any person or entity; and OWNER shall hold AGENT harmless and indemnify AGENT therefrom.
5. Should this Agreement initiate while an existing tenant's security deposit is in OWNERS possession, AGENT shall be given a full accounting of said deposit. AGENT shall have no obligation or liability whatsoever concerning the security deposit to any person or entity; the OWNER shall hold AGENT harmless and indemnify AGENT therefrom.

**I. ADDRESS OF OWNER:** OWNER expressly agrees, within twenty (20) days of change, to advise AGENT, in writing, of any change of address. Any notice or accounting statement or other document required or desired to be given by AGENT to OWNER may be given by mailing to the address noted hereon, or the most recent address of OWNER shown in the records of the AGENT; and notice so mailed shall be as effectual as if served upon such party in person at the time of depositing such notice in the mail.

**J. TERMINATION:** This agreement may be terminated by either party upon sixty (60) day's written notice. If so terminated, OWNER shall retake possession of the premises,

subject to the rights of any tenant rightfully in possession. Other than an amount equal to any outstanding AGENT or third-party obligations then remaining, OWNER's proceeds shall be distributed by AGENT thirty (30) days after termination. Each relevant portion of the proceeds not distributed at such time shall be distributed by AGENT to OWNER immediately following the satisfaction of the corresponding obligation.

**K. DEFICIT ACCOUNT:** In the event of AGENT's termination, should there be any outstanding and unpaid obligations, debts, or charges due AGENT, any amounts on account or received by AGENT on account or otherwise due OWNER shall be applied first to satisfy those obligations and then disbursed to OWNER. OWNER waives all protest and defenses against AGENT for such lawful disbursements. AGENT's lien rights against the subject property shall not be waived by this provision.

**L. PARTIAL WAIVE OR ACQUIESCENCE NO BAR:** AGENT's or OWNER's waiver, forbearance, or
acquiescence of any of its rights or remedies, in whole or in part, shall not serve to waive, bar, or
compromise any contemporaneous or subsequent right or remedy.

**M. ATTORNEY FEES AND COSTS:** The unsuccessful party in litigation to enforce the terms and conditions of this Agreement shall pay the reasonable attorney fees and costs of the successful party.

**N. WHOLE AGREEMENT:** This writing, as amended in writing from time to time, embodies the entire agreement between the parties and is not based upon any other representation whatsoever, expressed or implied, except as herein contained. The Agreement cannot be modified except in writing and agreed to by the parties.

**V. EFFECTIVE DATE:** Management by AGENT shall be effective as of date executed herein. This agreement shall automatically be renewed for additional one year periods from the end date stated as its ending date unless written notice of its non-renewal is given in accordance with IV-J above.

**VII. ITEMS OF MUTUAL AGREEMENT:**
1. OWNER ( ) does / ( ) does not authorize AGENT to have the furnace HVAC system serviced twice each year;
2. OWNER ( ) does / ( ) does not authorize AGENT to have the sprinkler system drained in the winter and re-pressurized in the Spring of each year;
3. Pets ( ) shall - ( ) shall not be allowed, and/or limited as follows:_____. A pet deposit of $_____ shall be collected of which $_____ shall be considered non-refundable.
4. OWNER ( ) does / ( ) does not permit smoking.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands this _____ day of _____.

AGENT / ABC Management – Baltimore, LLC
By: _____
Authorized Signature      *Jason Walsh*
                          7B81B22226B040D
_____
Printed Name


By: _____
Name: Anibal Orrico      Sep 18, 2019
Title: Managing Member


OWNER:_____
Social Security No. or Federal I.D. No. _____
OWNER:_____
Social Security No. or Federal I.D. No. _____

## Attachment A
## Premises

<u>Name of Property</u>     <u>Address of Property</u>

3831 Brooklyn Ave, Baltimore, MD, 21225 USA

**WITNESSETH** that, in order to induce the AGENT to enter into this agreement, OWNER hereby Represents and Warrants to AGENT that he/she/they is/are the OWNER(s) of all the properties listed in Exhibit A (hereinafter "premises") as updated from time to time, that the premises have necessary Fire and Extended Coverage and Liability Insurance current, lead certificates if required, that the premises meet all required building and use codes, AND that the premises is registered both with the Municipality and with Maryland Department of Environment as required.

9/18/2019

Sep 18, 2019